UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LINDA C. DICKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:19-CV-21-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL, [1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final

decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner")

denying the application of Plaintiff Linda C. Dickerson ("Plaintiff") for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

§§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate

judge pursuant to 28 U.S.C. § 636(c). (Doc. 11). Because I find the decision denying benefits was

supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's

application.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to
Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill
as defendant in this action. No further action needs to be taken to continue this suit by reason of
the last sentence of 42 U.S.C. § 405(g).

# I. PROCEDURAL BACKGROUND

On November 29, 2012, Plaintiff applied for DIB and a period of disability, alleging that she had been unable to work since November 9, 2012. (Tr. 310-11). On December 6, 2012, she applied for SSI, again alleging that she had been unable to work since November 9, 2012. (Tr. 312-16). She alleged disability based on herniated discs, swelling in her feet and legs, arthritis in her spine and foot, pain, fatigue, and depression. (Tr. 358). Her applications were initially denied. (Tr. 126, 138, 144-49). On March 11, 2013, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 142-43). On August 19, 2015, following two hearings, the ALJ found that Plaintiff was not under a "disability" as defined in the Act. (Tr. 7-26). On October 15, 2015, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 6). On September 6, 2016, the Appeals Council declined to review the case. (Tr. 1-5). Plaintiff appealed the decision to this Court, and on March 16, 2018, the Court remanded the case to the Commissioner for further evaluation of Plaintiff's subjective allegations. (Tr. 869-71, 940-59). In June 2018, the Appeal Council remanded the claims to the ALJ. (Tr. 964). The ALJ held a supplemental hearing on August 29, 2018. (Tr. 791-841). On November 21, 2018, the ALJ issued a partially favorable decision, finding Plaintiff was not disabled prior to April 23, 2016, but was disabled beginning April 23, 2016 (the date on which her age category changed from an individual closely approaching an advanced age to an individual of advanced age under 20 C.F.R. § 404.1563). (Tr. 723-58). Plaintiff did not seek review by the Appeals Council, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.    FACTUAL BACKGROUND

At the time of the first hearing before the ALJ, on October 27, 2014, Plaintiff testified that she was 53 years old, was 5'4" tall, and weighed 250 pounds. (Tr. 32). She had worked in the past doing housekeeping and laundry at a nursing home for 25 years, which involved lifting 50 to 75 pounds at a time. (Tr. 33-34). She also worked as a home health aide for her boyfriend, helping him dress, bathe, shower, and do other tasks. (Tr. 34-35). Plaintiff testified that she stopped doing both jobs in 2012 because she had problems with leg swelling that made her unable to walk or work. (Tr. 33-35). Plaintiff also testified that she has hypertension that makes her legs swell every night and that sometimes the swelling causes her to be unable to walk without a walker; that she has daily headaches, that she sleeps all the time from her medicines, that her shoulders hurt and she cannot lift more than a gallon of milk without pain; that she is diabetic and has high blood pressure; that she has back pain and lies around a lot to deal with it; and that she has depression and cries every week or so for a day or two. (Tr. 35-43). She takes care of her boyfriend's granddaughter and plays computer games during the day, though she cannot sit at the computer for very long. (Tr. 49-51). At the supplemental hearing on June 24, 2015, Plaintiff testified that she has tried to lose weight and has not been successful, that if she pushes herself and walks too far then her legs start swelling and she is down for several days, that she elevates her feet for about six hours between 8:00 a.m. and 5:00 p.m., and that her legs swell even when she is on diuretics. (Tr. 102-04).

At a third hearing, following remand, Plaintiff testified as follows. She lives with her boyfriend, his daughter, and his daughter's four children, but she does not have any child care responsibility for the children. (Tr. 820). She previously was responsible for watching her boyfriend's daughter's daughter, but at the time she never lifted the child, took her outside, bathed

her, or cooked for her. (Tr. 820-22). Plaintiff testified that during the relevant period of November 2012 through August 2016, she would be up on her feet for maybe ten minutes at a time, about five times a day. The rest of the time, she would be on the couch or in a lounge chair, with her feet propped up. (Tr. 823). Plaintiff would be up on her feet during a shopping trip for maybe 30 minutes at the most, and her legs would hurt and swell, and she would get out of breath. (Tr. 827). Her doctor told her to elevate her legs. (Tr. 822). Plaintiff was wearing flip-flops at the hearing, because that is all she can wear given the swelling in her ankles and feet. (Tr. 824). Her doctors have changed her medication and dosage several times. (Tr. 826). There were times when Plaintiff as not on her blood pressure medication, because she could not stay awake to go to work or because she did not have the money to buy it. (Tr. 824). The lisinopril makes her fatigued and she takes naps on and off all day. (Tr. 825).

With regard to Plaintiff's medical records, the Court accepts the facts as provided in the parties' statement of facts and responses. The Court will address specific facts relevant to the issues presented by the parties' briefs, as needed, in the discussion section below.

### III.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous

work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R.

§§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, November 9, 2012; that Plaintiff had the severe impairments of degenerative disc disease, hypertension, osteoarthritis of the right shoulder, diabetes, and morbid obesity; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 730-33). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift/carry up to twenty pounds occasionally and up to ten pounds frequently. She can stand and walk four hours out of an eight-hour workday. She can sit for six hours in an eight-hour workday. She cannot climb on ropes, ladders, or scaffolds. She can occasionally climb on ramps and stairs, stoop, kneel, crouch, or crawl. She can frequently reach overhead with the right upper extremity. She is limited to no more than frequent exposure to temperature extremes. She should avoid concentrated exposure to work hazards, such as unprotected heights and being around dangerous moving machinery. She should avoid concentrated exposure to wet surfaces and vibration.

(Tr. 733-34).

At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work as a hand launderer. (Tr. 743). At Step Five, relying on the testimony of a Vocational Expert, the ALJ found that prior to April 23, 2016 (when her age category changed from "closely approaching advanced age" to "advanced age"), there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including representative occupations such as copy machine operator (light, unskilled, Dictionary of Occupational Titles No. 207.686-014, 49,000 jobs in the national economy); electrode cleaner (light, unskilled, Dictionary of Occupational Titles No. 729.687-014, 61,000 jobs in the national economy); and wafer cleaner (light, unskilled, Dictionary of Occupational Titles No. 590.685-062, 51,000 jobs in the national economy). (Tr. 744-45). However, the ALJ found that beginning April 23, 2016, when Plaintiff's age category changed, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform, and a finding of "disabled" was reached by direct application of Medical-Vocational Rule 202.06. (Tr. 747). Accordingly, the ALJ found that Plaintiff was not disabled prior to April 23, 2016, but became disabled on that date and continued to be disabled through the date of his decision. (Tr. 747).

## V.    DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ did not conduct a proper analysis of the credibility of Plaintiff's subjective complaints, as directed on remand; and (2) that the RFC finding is not supported by substantial evidence.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B. The ALJ's Analysis of Plaintiff's Subjective Complaints

Plaintiff's first argument is that the ALJ erred by failing to conduct a new credibility analysis, as he was directed to do on remand, or, in the alternative, that the ALJ did not properly apply Social Security Ruling 16-3p.

In the Court's previous Memorandum and Order remanding this case, the Court stated:

"Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quotation marks omitted). When evaluating the credibility of a plaintiff's subjective complaints, the ALJ must consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore* [*v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)] (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints.' *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)).

(Tr. 952-53). The Court noted that "[t]he central issue in this case is the credibility of Plaintiff's assertion that she has leg swelling (particularly after exertion) and back pain that make it difficult for her to sit, stand, lift, and walk." (Tr. 953). In reviewing the ALJ's credibility analysis, the Court found that several of the statements the ALJ made to support that credibility analysis were not supported by the record. (Tr. 953-58). Specifically, the Court noted that the ALJ mischaracterized Plaintiff's very limited Plaintiff's daily activities "extensive" and that noted that those activities "certainly do not support the ALJ's finding that Plaintiff can stand/walk for six hours in an eight-

hour workday, lift up to 50 pounds, and frequently stoop, kneel, and crouch" (Tr. 954-55); that the

ALJ improperly interpreted a form describing Plaintiff's past activities such as dancing and playing

tennis as a description of Plaintiff's current activities (Tr. 955-56); that the ALJ asserted that

Plaintiff's "legal issues provide an alternative explanation for her lack of employment" when there

was no evidence in the record to support that statement (Tr. 956-57); that the ALJ mischaracterized

the record when he indicated that Plaintiff's blood pressure was well-controlled when Plaintiff was

taking her medications (Tr. 957-58); and that the ALJ characterized several records as showing

noncompliance with treatment records when they actually were just treatment notes recording

which medications Plaintiff was or was not taking at various times or notes indicating that Plaintiff

could not afford her medication. (Tr. 958). The Court concluded:

> In light of the fact that many aspects of the credibility analysis do not appear to be
> supported by the record, and the fact that the evidence as a whole does not weigh
> so heavily against Plaintiff's subjective complaints that the ALJ would necessarily
> have disbelieved Plaintiff absent the ALJ's erroneous inferences from the record,
> the Court finds that remand is required.

(Tr. 958).

In the new decision on remand, the ALJ noted that this Court had directed the ALJ to

conduct a new credibility analysis. (Tr. 727). However, the ALJ also correctly noted that the

Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016,

that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p,

2017 WL 5180304, at *1-*2 (Oct. 25, 2017). (Tr. 727). This ruling clarifies that "subjective

symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to

be considered remain the same under the new ruling as they were previously. *See id.* at *13 n.27

("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529,

416.929 (addressing how symptoms such as pain are evaluated). The ALJ applied the new ruling

in the new decision, and the Court will evaluate whether the ALJ's new decision is consistent with SSR 16-3p and the applicable regulations, rather than evaluating whether the ALJ performed a "credibility" analysis, keeping in mind that the factors to be considered are substantially the same.

Under SSR 16-3p, in evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." 2017 WL 5180304, at *4. The ALJ will also consider the following factors: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-*8. *See also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (same); *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (stating that relevant factors to consider claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2007 WL 5108034, at *10. The Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is supported by good reasons and substantial evidence. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018). *See also Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

As a preliminary matter, the Court notes that the ALJ did give more weight to Plaintiff's subjective complaints in the new decision than he did in her prior decision. In the new decision, the ALJ limited Plaintiff to standing and walking four hours in an eight-hour workday (instead of six), to lifting/carrying only twenty pounds occasionally (instead of fifty pounds), and to occasional (instead of frequent) stooping, kneeling, crouching, and crawling. The ALJ did, however, significantly discount Plaintiff's subjective complaints even in the new decision. After review of the record in light of the deference the Court must give to the ALJ, the Court finds that the ALJ's analysis of Plaintiff's subjective complaints was consistent with SSR 16-3p and was supported by substantial evidence. A review of the ALJ's decision shows that the ALJ did not repeat the errors the Court found concerning in the prior discussion, discussed much of the relevant evidence and several of the factors in a manner supported by the record, and explicitly discounted Plaintiff's subjective complaints. Thus, the Court must defer to that determination.

First, the ALJ reasonably considered that the objective medical evidence was not entirely consistent with Plaintiff's complaints. As the ALJ correctly noted, contrary to Plaintiff's claims of leg swelling so severe that she could not walk, the objective examinations during the relevant time period showed only no edema, trace edema or +1 edema—levels of edema that the medical experts

testified would not be a major problem and would not likely affect Plaintiff's ability to stand or require elevation of the legs. (Tr. 86-87, 98-99, 529, 533, 547, 558, 581, 585, 589, 624, 645, 692, 696, 710, 722, 737-42, 802, 806-07, 811-14, 1293, 1304, 1323, 809, 818).[2] The ALJ also noted numerous unremarkable or normal objective findings related to Plaintiff's degenerative disc disease and osteoarthritis of the right shoulder, including, but not limited to, physical examination findings showing normal gait and station, full strength in upper and lower extremities, negative straight leg test, intact sensation, and normal reflexes (Tr. 529, 547, 558, 624,734-42); a shoulder X-ray revealing only mild osteoarthritis (Tr. 512, 736).   Although an ALJ may not reject a claimant's statements about the intensity and persistence of her symptoms "solely because the available objective medical evidence does not substantiate" those statements, the regulations recognize that objective medical evidence is "a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. §§ 404.1529 (c)(2), 416.929(c)(2). *See Goff v. Barnhart*, 421 F.3d 785, 792 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding RFC finding that was based on largely mild or normal objective findings).

Second, the ALJ reasonably  considered the fact that Plaintiff received only conservative treatment for her impairments. (Tr. 737, 742). For Plaintiff's hypertension and leg swelling, Plaintiff's doctors suggested leg elevation, compression stockings (which Plaintiff did not use because she found them uncomfortable), dietary changes, and medication. (Tr. 498, 737, 742). For

---

[2] Plaintiff notes that in April 2012, Plaintiff had 3+ pitting edema (Tr. 499); however, that record is dated seven months prior to the alleged onset date, and at a time when Plaintiff had not taken any mediation for several months. (Tr. 310, 312, 359, 498, 499, 737, 1146).

Plaintiff's degenerative disc disease and osteoarthritis of the right shoulder, the ALJ noted that Plaintiff received chiropractic treatment, but that there was nothing to indicate that she had any ongoing treatment with an orthopedist, neurologist, or pain management specialist, nor was there any evidence that she required interventions such as surgery or ongoing injections. (Tr. 742). For Plaintiff's obesity, the ALJ noted that Plaintiff's doctors recommended weight loss, but there is no evidence that Plaintiff's doctors ever recommended she seek ongoing treatment with a bariatric specialist or considered bariatric surgery. (Tr. 742). In addition, the ALJ reasonably noted that although Plaintiff alleged very serious difficulties in standing and walking, there is no indication that Plaintiff was prescribed a cane, walker, or wheelchair. (Tr. 742). The conservative treatment Plaintiff received was a reasonable consideration in partially discounting Plaintiff's complaints. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding that ALJ properly considered claimant's relatively conservative treatment history when evaluating her subjective complaints).

Third, the ALJ reasonably considered the medical opinion evidence regarding Plaintiff's functional limitations, which consistently suggested Plaintiff was significantly more capable than her testimony would have indicated. The ALJ gave significant weight to the testimony of Kweli J. Amusa, M.D., who testified at the hearing on remand. (Tr. 739-40). Dr. Amusa opined, *inter alia*, that Plaintiff could not lift greater than 20 pounds occasionally or 10 pounds frequently; would be limited to standing and walking four out of eight hours.; and would be limited to sitting six hours out of eight. (Tr. 805). Notably, when Dr. Amusa testified, both the ALJ and Plaintiff's attorney questioned him extensively about the effects he thought Plaintiff's leg swelling would have had on her ability to stand and walk. (Tr. 806-18). Dr. Amusa testified that it was unlikely that the level of swelling in Plaintiff's records would cause problems with standing and walking, and that he did not see any evidence in the record that being on her feet during the day would cause her pain and

swelling to increase. (Tr. 807, 815-16, 818). The ALJ also gave significant weight to the opinion of Anne E. Winkler, M.D., Ph.D. (Tr. 740-41). Dr. Winkler reviewed Plaintiff's records in October 2014 and opined, *inter alia*, that Plaintiff could lift 50 pounds occasionally and 20 pounds frequently, could sit for four hours at a time and for a total of eight hours, and could stand and walk for three hours at a time for a total of six hours. (Tr. 446-47). Dr. Winkler also testified that individuals who are more physically active usually have less edema; that regular exercise is often recommended to treat edema; that she found no evidence in the medical record that working or not working would impact Plaintiff's leg swelling; and that leg elevation would not normally be recommended for someone with Plaintiff's level of edema. (Tr. 87-88, 93, 98-99). The ALJ found Dr. Winkler's opinion was entitled to significant weight, because she was an objective expert board certified in internal medicine and rheumatology, and because her opinion was mostly consistent with the clinical findings; however, the ALJ imposed some limitations beyond those in Dr. Winkler's opinion. (Tr. 741). The ALJ also gave some weight to the opinion of state agency medical consultant Dr. Kevin Threlkeld, M.D., who reviewed Plaintiff's medical records and found that for the period between August 20, 2015, and July 31, 2016, Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, sit for six hours, and stand and walk for 6 hours. (Tr. 742, 911-12). However, the ALJ found Plaintiff more limited than reflected in Dr. Threlkeld's opinions. (Tr. 742). The ALJ gave only little weight to the opinion of the consultative examiner, Dennis A. Velez, who found that Plaintiff had no impairments that limited her standing, sitting, walking, manipulating, lifting, or carrying ability (Tr. 548); the ALJ found the evidence supported more limitations than were present in Dr. Velez's opinion. (Tr. 741).

The ALJ's decision also indicates that he considered other relevant factors that tend to support Plaintiff's subjective complaints, including her consistent work history from 1987 through

2012, some positive objective examination findings with regard to Plaintiff's back and shoulder problems, and the fact that Plaintiff's doctors made several adjustments to her medications and dosages. (Tr. 735, 737, 742). Although the ALJ apparently did not give as much weight to those factors as Plaintiff would have liked, it is apparent that he considered them.

Plaintiff argues that the ALJ again gave too much weight to her very limited daily activities, such as occasionally doing laundry shopping in stores, and preparing sandwiches. (Tr. 743). The Court finds no reversible error. As noted in the Court's prior decision, the Court acknowledges that Plaintiff's reported daily activities are actually quite limited, and that the Eighth Circuit has often found it improper for an ALJ to rely on very limited activities such as the ones Plaintiff performs to discredit complaints of pain and inability to perform full-time work. *See, e.g., Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005) (reversing where the ALJ gave undue weight to Plaintiff's ability to perform daily activities such as laundry and shopping without considering the specific limitations she reported in her ability to do those activities; stating, "this court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work") (quotation marks omitted). However, upon review of the decision as whole, it does not appear that the ALJ relied heavily Plaintiff's daily activities in making his decision. (Tr. 743). Moreover, unlike the last decision from the ALJ, in which the ALJ suggested that Plaintiff was capable of playing tennis and dancing, the ALJ did not, in this decision, significantly mischaracterize Plaintiff's daily activities. The Court finds that the ALJ did not err by considering Plaintiff's daily activities as one factor in conjunction with the other factors discussed above in evaluating Plaintiff's complaints.

Plaintiff also suggests that the ALJ did not follow this Court's prior order in that he considered that Plaintiff's swelling was sometimes worse during gaps in her medication usage without considering whether the gaps in medication usage were due to Plaintiff's financial difficulties. The Court finds no error. The Court's concern in the prior order was that the ALJ was discounting the credibility of Plaintiff's complaints because she decided not to comply with her treatment provider's recommendations regarding her medications, without considering whether Plaintiff was financially capable of such compliance. (Tr. 17, 958). In the new decision, it does not appear that the ALJ was considering the gaps in medication as evidence of Plaintiff's noncompliance with treatment recommendations, for purposes of discounting her credibility; instead, he was merely accurately discussing Plaintiff's medical records. (Tr. 737).

In sum, the Court finds that the ALJ conducted an express evaluation of Plaintiff's claimed symptoms, considered several of the relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. The evaluation of a claimant's symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). Because the ALJ's evaluation of Plaintiff's symptoms is supported by substantial evidence, the Court must defer to that evaluation. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d§ 626, 632 (8th Cir. 2008)).

## C. The RFC Assessment

Plaintiff's second argument is that the RFC finding is not supported by substantial evidence. A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and

others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

Based on a careful review of the record, the Court finds that the ALJ's determination that Plaintiff had the RFC to perform light work, with several additional limitations, was supported by substantial evidence, including medical evidence. As discussed at length above, the RFC is supported in part by the objective medical evidence, which suggested that Plaintiff's leg swelling and back pain were not as limiting as she reported; the opinion evidence from three reviewing physicians and one examining physician, which suggested that Plaintiff could perform work as demanding or more demanding than the work described in the RFC; and the ALJ's analysis of Plaintiff's subjective complaints.

Plaintiff also argues that the ALJ's decision does not "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as required by Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The Court disagrees. The ALJ discussed each of Plaintiff's impairments at length and adequately explained how the

medical and nonmedical evidence affected the RFC. (Tr. 29-52). However, even assuming, *arguendo*, that the ALJ should have been more explicit in discussing how each of Plaintiff's impairments accounted for by the RFC, Plaintiff has not shown that that the ALJ's failure to do so affected the outcome of the case. The Court "will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (quotation omitted). *See also Depover v. Barnhart*, 349 F.3d at 563, 567-68 (8th Cir. 2003) (no remand required where the ALJ did not include an explicit function-by-function narrative discussion but clearly considered the relevant functions and implicitly found no limitations in them). Here, in light of the ALJ's extensive discussion of each of Plaintiff's impairments, it is abundantly clear that the ALJ considered them and decided that they did not warrant additional limitations in the RFC.

Plaintiff argues that the ALJ improperly based the RFC determination on the opinion of a non-treating, non-examining doctor, Dr. Amusa, which Plaintiff argues does not constitute substantial evidence in a Step Five case. *See* Doc. 16, at 37 (citing *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000)). However, as discussed above, the ALJ did not rely solely on the opinion of Dr. Amusa in making the RFC assessment; instead, he relied on the opinions of several reviewing and consulting physicians, the objective medical evidence provided by Plaintiff's treating sources, and his own assessment of Plaintiff's subjective complaints.

Plaintiff next argues that the ALJ did not adequately consider Plaintiff's obesity in making the RFC assessment, as required by Social Security Ruling 02-01p. The Social Security Administration recognizes that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-01p, 2002 WL 34686281, at *1 (Sept. 12, 2002). SSR 02-01p directs the ALJ to consider, among other things,

"the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6. Here, the ALJ expressly recognized his obligation to consider Plaintiff's obesity under SSR 02-01p, discussed Plaintiff's height, weight, and body mass index, and stated that he had considered the effect that Plaintiff's obesity might have in limiting Plaintiff to work at the light exertional level and in imposing additional limitations. (Tr. 738). In addition, the medical experts on whose opinions the ALJ relied were aware of Plaintiff's obesity. Because the ALJ's discussion makes it clear that he reasonably considered her obesity in evaluating her RFC, the Court finds no reversible error. *See Heino v. Astrue*, 578 F.3d 873, 881–82 (8th Cir. 2009) (holding that the ALJ adequately took into account a claimant's obesity where the ALJ "made numerous references on the record" to claimant's obesity, noted her weight and height, and included "has a history of obesity" in the hypothetical to the VE; stating, "Because the ALJ specifically took [the claimant's] obesity into account in his evaluation, we will not reverse that decision."); *Brown v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004) (finding that an ALJ adequately considered obesity when he "specifically referred to [the claimant's] obesity in evaluating his claim"). *See also Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (finding no error in the ALJ's consideration of Plaintiff's obesity in part because "[t]he ALJ adopted the opinions of Dr. Bunting and Dr. Varela who were aware of the plaintiff's obesity").

Plaintiff also argues that the ALJ failed to account for Plaintiff's swelling in her legs and the need to elevate them. As discussed above, however, the ALJ did consider these allegations, but he reasonably found they were not consistent with the record as a whole. The ALJ specifically and explicitly stated, "the undersigned does not find that the claimant was required to elevate her legs during the workday." (Tr. 746). That finding was supported by the opinions of the medical experts and was not inconsistent with the record as a whole.

In sum, the Court finds that the RFC assessment was supported by substantial evidence. The record contains conflicting evidence, some of which might support limitations greater than those assessed by the ALJ. However, the ALJ reasonably weighed the evidence in a manner consistent with the evidence and the regulations. The ALJ's decision fell within the "zone of choice," and this Court may not reverse that decision even if this Court might have reached a different conclusion. See *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2020.